UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY E. WATTS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 15-1241 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **O R D E R**

This matter is now before the Court on Petitioner, Larry Watts' ("Watts"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Watts' § 2255 Motion [1] is DENIED.

### BACKGROUND

On February 21, 2013, Watts was charged in a superceding indictment with membership in a street gang, conspiracy to use/carry a firearm during a drug trafficking crime, conspiracy to distribute controlled substances, using/carrying a firearm during a drug trafficking crime, possession of a firearm during a drug trafficking crime, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, and possession of heroin with the intent to distribute. On February 13, 2014, he pled guilty to possession of a firearm during a drug trafficking crime (Count 10) and being a felon in possession of a firearm (Count 11). The parties agreed to a sentence of 15 years on both counts, with 10 years on Count 10 and 5 years on Count 11. Watts was sentenced to 15 years' imprisonment on June 13, 2014, and the remainder of the counts in the superceding indictment were dismissed.

Watts now brings this § 2255 motion in which he argues that his guilty plea was not knowingly and voluntarily made due to ineffective assistance of counsel during the plea bargaining process and at sentencing. The Government has filed its response, and this Order follows.

## DISCUSSION

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993), *citing Scott v. United States*, 997 F.2d 340 (7th Cir. 1993).

A § 2255 motion is not, however, a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S.Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698. Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710-20 (7th Cir. 1994).

Watts would appear to be barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. So long

- 2 -

as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced.  Id., citing United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144-45 (7th Cir. 1999) (finding that the right to appeal can survive a waiver where the agreement itself is involuntary, the trial court relied on a constitutionally impermissible factor, or the sentence exceeded the statutory maximum).  The validity of the appeal waiver depends on whether the waiver was "express and unambiguous" and whether the record clearly shows that the waiver was made "knowingly and voluntarily." United States v. Woolley, 123 F.3d 627, 632 (7th Cir. 1997)

Watts attempts to void the plea agreement and waivers contained therein by claiming that he received ineffective assistance of counsel.  The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.   A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon going to trial. Woolley, 123 F.3d at 635. "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" United States v. Ryan,  986 F.Supp.

509, 513 (N.D.Ill. 1997), *citing* Key, 806 F.2d at 139; *see also* McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, Watts argues that his plea (which included waivers of the right to bring a direct appeal and collateral attack) was not knowingly and voluntarily entered into as a result of ineffective assistance of counsel. Specifically, he claims that counsel failed to seek dismissal of Counts 1, 2, 6, and 10 of the superceding indictment. Assuming that a motion had been filed and granted, Watts argues that he received no real benefit from the plea agreement as he did not receive the 3-point reduction for acceptance of responsibility. It is unclear what relief is being sought, as Watts does not state that absent counsel's advice, he would not have accepted the plea offer and does not ask that his plea agreement be vacated.

Watts' counsel, John Lonergan, has filed an Affidavit in this matter. In the Affidavit, Attorney Lonergan states that he discussed the allegations of the superceding indictment with Watts on many occasions and researched the issues before concluding that there was no viable basis to seek dismissal of the charges identified by Watts. They reviewed the plea agreement thoroughly on multiple occasions, and Attorney Lonergan explained to Watts that he could receive anywhere from 10-15 years at sentencing, depending on how the Court handled Count 11. Watts agreed that the plea agreement would benefit him and that he did not want to go to trial.

Attorney Lonergan notes that Watts did receive a 3-point reduction in his offense level for acceptance of responsibility. He was sentenced to 10 years' imprisonment on Count 10, which carried a sentencing range of 10 years to life, while Count 11 carried a range of zero to 10 years. Lonergan's affidavit indicates that Watts understood that 10 years was the least amount of time that

he could receive on Count 10, as that was the minimum sentence for that offense, and that he could receive anywhere from zero to five years consecutive to that for Count 11.

A review of the transcript of the plea hearing reveals that after a detailed discussion of the maximum sentence he could face, Watts received an explanation of the waiver provision and its consequences during the plea colloquy. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver or penalty provisions, and hence, he has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Watts' waiver and guilty plea, as well as his competency.

When the Court accepted Watts' guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The pertinent portion of the record reveals the following colloquy between Watts and the Court after he was placed under oath:

> Q. Sir, I'm going to ask you a number of questions. Please answer them openly and honestly. If you don't understand the question or you don't hear me or you have any questions, please consult with your attorney. If you answer them, I can only assume that you heard them and/or understood them. Fair enough?
> A. Yes, sir.
> Q. Would you state your full name?
> A. Larry Earl Watts.
> Q. Where were you born?
> A. Peoria.
> Q. Are you a United States citizen?
> A. Yes.
> Q. How old are you?
> A. 24 years of age.
> Q. How far did you go in school?
> A. To the 11th.
> Q. Can you read and write?
> A. Yes, sir.
> Q. Have you been treated recently for any mental illness or addiction to narcotic drugs?
> A. Now?
> Q. Yes.

A.     No.

Q.     Have you been treated previously for mental illness?

A.     I took an examination.

Q.     How long ago?

MR. LONERGAN:   At the beginning of this case, Your Honor, his original counsel had him examined.

THE COURT:   And we have already addressed that; he was found fit.
MR. LONERGAN:   Yes, sir.


BY THE COURT:

Q.     Are you currently under the influence of any

drugs or medication or alcoholic beverage?

A.     I do not indulge.

Q.     How is your physical health?

A.     It is fair.

Q.     What's wrong?

A.     I'm fine.

Q.     Okay.  I thought that you said "fair."

A.     Yeah.

Q.     Have you received a copy of the indictment

against you –

A.     Umm.

Q.     – the charges, that is?

A.     Yes.

Q.     Have you had a chance to discuss those with

Mr. Lonergan?

A.     Yes, I have.

Q.     Have you had a chance to discuss your case and

any possible defenses with Mr. Lonergan?

A.     Yes.

- 7 -

Q.  Did you have an opportunity to read and discuss the plea agreement with Mr. Lonergan before you signed it?

A.  Yes, we talked yesterday about it.

Q.  Does the plea agreement represent the entire understanding you have with the government?

A.  Yes.

Q.  Do you understand the terms of the plea agreement?

A.  Yes, Your Honor.

Q.  Has anyone made any promises or assurances to you that are not in the plea agreement to get you to plead guilty?

A.  No.

Q.  Has anyone threatened you in any way to get you to plead guilty?

A.  No.

Q.  Is this your signature on page 14 of the plea agreement?

A.  Yes, it is, Your Honor.

Q.  And I note that underneath it you wrote "without prejudice"?

A.  Uh-huh.

Q.  What does that mean?

A.  Mr. Lonergan had explained it to me saying like it wasn't by no force or threat.

Q.  Okay. So that's what you mean by that?

A.  Yes.

Q.  That nobody has threatened you to do this?

A.     Yes.

Q.     All right. Very good. Okay. Then I'm told that you will pleading guilty to Counts 10 and 11 in which you are charged with use, carrying, and possession of a firearm during a drug trafficking crime in violation of Title 18 United States Code 924(c), and felon in possession of a firearm in violation of Title 18 United States Code Section 922(g).

Is that your understanding?

A.     Yes, Your Honor.

Q.     To sustain the charges against you, the government must prove the following propositions beyond a reasonable doubt:

As to Count 10, you must prove that you used or carried a firearm, and that this use or carrying was during and in relation to a drug trafficking offense, that you possessed a firearm, that this possession was in furtherance of the drug trafficking crime, and that the firearm was discharged.

Do you understand the elements of the charges to Count 10?

A.     Yes, Your Honor
Q.     As to Count 11, possession of firearms by a felon; that you knowingly possessed firearms, and that the firearms had previously traveled in interstate commerce, and that you had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

- 7 -

Do you understand the elements of the charges as to Count 11?

A. Yes, Your Honor.

Q. The possible penalties pursuant to statute are as follows:

As to Count 10, carries a sentence of ten years in prison, a fine of $250,000, a special assessment of $100, carries a mandatory supervised release term of at least ten years.

As to Count 11, carries a maximum potential penalty of ten years in prison, a maximum fine of $250,000, $100 special assessment, and a supervised release term of up to five years.

This supervised release term as to each counts carry with them their own terms and conditions. Any violation of those terms and conditions could result in your supervised release period being revoked and you being imprisoned for any or all or part of that supervised release period without credit for time previously served. Do you understand the possible – do you understand all that?

A. Yes.

Q. Paragraphs 9 and 10 discuss your waiver of right of appeal and your waiver of right to collateral attack. Federal law affords you a right to appeal a final decision of the district court. And federal law affords you a right to appeal the conviction and/or the sentence imposed. This paragraph tells

- 8 -

me that you understand these rights, that you have thoroughly discussed these rights with your attorney, Mr. Lonergan, that you knowingly and voluntarily waive your right to appeal any and all issues relating to the plea agreement and conviction and sentence in order to enter into this plea agreement with the government; is that correct?

A.   Yes, Your Honor.

Q.   Do you have any questions about it?

A.   No, sir.

Q.   Paragraph 10 tells you that you have a right to attack the conviction and/or the sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or the laws of the United States or that you received ineffective assistance from your attorney or that the Court was without proper jurisdiction or that the conviction and/or sentence was otherwise subject to collateral attack.

Furthermore, this paragraph goes on to say that you understand this, that you knowingly and voluntarily waive these rights, that you have discussed this with Mr. Lonergan, and that you wish to give up these rights in order to enter into this plea agreement with the government; is that correct?

A.   Yes, Your Honor.

Q.   Okay. It's my understanding that at the time of sentencing the United States agrees to recommend a sentence of no more than 15 years.
  Is that your understanding?

- 6 -

A.  Yes, it is, sir.

THE COURT: Okay. Factual basis, please.

MR. CHAMBERS:  Your Honor, if this case were to go to trial, the government would prove beyond a reasonable doubt that with respect to Count 10, that on or about March 31st, 2012, the defendant knowingly used and carried a firearm during and in relation to a drug trafficking crime, mainly the conspiracy to distribute and possess with intent to distribute controlled substances as charged in Count III of the superseding indictment, and knowingly possessed those same firearms in furtherance of that same conspiracy. And the parties stipulate that the firearm was discharged.

Just so the record is clear, Your Honor, the defendant is not admitting that on March 31st, 2012, he was involved in a felony drug specific instance crime at that time. What he's admitting is that the gun was used in furtherance and discharged in furtherance of the conspiracy, in that the members of the defendant's in the superseding indictment are members and associates of a group of individuals comprising a violent street gang known as the Bomb Squad in Peoria, Illinois.

Members and associates of the Bomb Squad possess cocaine, cocaine base, crack, heroin and marijuana for sell and distribution in Peoria, Illinois and elsewhere.

In order to protect their turf and profits derived from their drug trafficking and facilitate

their drug trafficking, among other reasons, the Bomb Squad used violence, threats of violence, intimidation and armed assaults to exclude other drug traffickers and rival gangs from the south end of Peoria, Illinois.

Bomb Squad members acquired, possessed, distributed and had access to firearms. And during the period of conspiracy, in furtherance of the conspiracy, various members charged in the indictment, various persons used firearms, carried firearms, possessed firearms, brandished firearms, and discharged firearms in furtherance of the drug conspiracy.

So, Your Honor, just so we are clear, with respect to that count, Count 10, the defendant is not admitting a specific drug crime occurred at that time that the firearm was discharged, just that it was in furtherance of the overall conspiracy.

With respect to Count 11, the government would prove that on or about May 17, 2012, the defendant knowingly possessed a firearm, a Smith & Wesson .44 caliber revolver which had previously traveled in interstate commerce, and the defendant had previously been convicted under the laws of the State of Illinois of a crime punishable by imprisonment for a term exceeding one year.

Your Honor, that would be the nature of the evidence if this case were to go to trial.

THE COURT: Mr. Lonergan, do you believe the


their drug trafficking, among other reasons, the Bomb Squad used violence, threats of violence, intimidation and armed assaults to exclude other drug traffickers and rival gangs from the south end of Peoria, Illinois.

Bomb Squad members acquired, possessed, distributed and had access to firearms. And during the period of conspiracy, in furtherance of the conspiracy, various members charged in the indictment, various persons used firearms, carried firearms, possessed firearms, brandished firearms, and discharged firearms in furtherance of the drug conspiracy.

So, Your Honor, just so we are clear, with respect to that count, Count 10, the defendant is not admitting a specific drug crime occurred at that time that the firearm was discharged, just that it was in furtherance of the overall conspiracy.

With respect to Count 11, the government would prove that on or about May 17, 2012, the defendant knowingly possessed a firearm, a Smith & Wesson .44 caliber revolver which had previously traveled in interstate commerce, and the defendant had previously been convicted under the laws of the State of Illinois of a crime punishable by imprisonment for a term exceeding one year.

Your Honor, that would be the nature of the evidence if this case were to go to trial.

THE COURT: Mr. Lonergan, do you believe the

government can produce that evidence at trial?

MR. LONERGAN: Yes, Your Honor.

BY THE COURT:

Q.    Mr. Watts, did you hear what I was just told?

A.    Yes, Your Honor.

Q.    Are those facts correct as they pertain to your case?

A.    Yes.

Q.    And are they in part the basis for your plea of guilty?

A.    Yes.

Q.    Okay. I'm reading on page eight paragraph 12(c), "The parties will agree to recommend a sentence of no more than 15 years on both counts with ten years on Count 10 and up to five years on Count 11."

   Is that your understanding?

A.    Yes, Your Honor.

Q.    Okay. With that in mind then, sir, your sentence will ultimately be determined by a combination of Advisory Sentencing Guidelines, possible authorized departures from those guidelines and other statutory sentencing factors. I understand that you have an agreement to recommend that both parties or Mr. Chambers will recommend no more than 15 years. Have you and Mr. Lonergan discussed how the guidelines might apply to your case?

A.    Yes.

- 9 -

THE COURT: Mr. Lonergan?

MR. LONERGAN: Judge, with regards to Count 10, there is a statutory application of ten years for the discharge of the firearm.

As to Count 11, in doing our calculations, I believe that it is under 2K2. We are looking at a range after acceptance of responsibility of approximately 36 to 48 months under the guidelines for that count consecutive to the Count 10.

MR. CHAMBERS: That is correct, Your Honor.

BY THE COURT:

Q. I won't be able to determine the guideline range for your case until after the Presentence Report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the guidelines as recommended by the Probation Office. So a sentence ultimately imposed may be different from any estimate your attorney may have given you. Do you understand that?

A. Yes.

Q. I also have the authority under some circumstances after your guideline range has been determined to depart upward or downward from that range, that may result in the imposition of a sentence that is either greater or lesser than the advisory guideline sentence. Do you understand that?

A. Yes.

Q. Do you have any questions at this time about the charge against you?

A. No, Your Honor.

Q. About your rights to trial?

A. No, Your Honor.

Q. About the possible penalties and how the Sentencing Guidelines will be calculated?

A. No, Your Honor.

THE COURT: Is there anything the parties believe needs to be addressed before I ask Mr. Watts how he pleads?

MR. CHAMBERS: Not for the government, Your Honor.

MR. LONERGAN: No, Your Honor.

THE COURT: Okay. Sir, with that in mind then how do you plead to Count 10, using, carrying, possessing a firearm during a drug trafficking crime?

THE DEFENDANT: I wish to plead guilty, Your Honor.

THE COURT: Okay. As to Count 11, possession of firearms by a felon?

THE DEFENDANT: I wish to plead guilty, Your Honor.

THE COURT: All right. I find that you are fully competent and capable of entered an informed plea. As to each charge you are aware of the nature of the charges and the consequences of your plea. The plea as to each charge is a knowing and

> voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted. You are now adjudged guilty of those offenses.

(Transcript of Change of Plea Hearing at 2-17)

This does not support Watts' assertions of ineffective assistance. He did not plead to Count 1 (which could have enhanced his sentence by 10 years), 2, or 6 (which he claims was duplicitous of Count 10); those counts were dismissed by the Government. Contrary to his argument, he did not receive the maximum penalty but rather received the statutory mandatory minimum penalty on Count 10, nor did he receive the top of the advisory guideline range on Count 11, and he did receive the three-level reduction to his offense level for acceptance of responsibility as reflected in his Revised Presentence Report. There is simply nothing in the record supporting a finding that counsel did not attempt to learn the facts of the case or fail to make a good-faith estimate of whether the evidence was sufficient to convict Watts.

Even assuming arguendo that counsel's performance was deficient, Watts fails to make any attempt to demonstrate prejudice by showing that but for the alleged errors, the result of the proceeding would have been different. He has therefore failed to demonstrate that ineffective assistance of counsel negated the knowing and voluntary nature of his plea and is not entitled to relief under § 2255.

## CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). The petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present

- 12 -

and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

Here, no reasonable jurist could conclude that Watts' claim was not flatly contradicted by the clear factual record and the law of this Circuit. Accordingly, this Court will not issue him a certificate of appealability.

## CONCLUSION

For the reasons set forth herein, Watts' Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 [1] is DENIED. This matter is now terminated.

ENTERED this 10th day of November, 2015.

    s/ James E. Shadid
    James E. Shadid
    United States District Judge